29 P.3d 380

**Jamal SPOCK, Respondent/Petitioner–
Appellant,**

v.

**ADMINISTRATIVE DIRECTOR OF THE
COURTS, State of Hawai'i, Petition-
er/Respondent–Appellee.**

No. 23065.

Supreme Court of Hawai'i.

Aug. 22, 2001.

Keith E. Tanaka, on the briefs, for respon-
dent/petitioner-appellant.

Girard D. Lau, on the briefs, Deputy At-
torney General, for petitioner/respondent-ap-
pellee.

MOON, C.J., and LEVINSON,
NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by ACOBA, J.

We granted the March 1, 2001 application
for certiorari filed by Petitioner/Respondent
Appellee Administrative Director of the
Court, State of Hawai'i (the Director)[1] be-
cause we believe the Intermediate Court of
Appeals (the ICA)[2] erred in reversing the

1. Hawai'i Revised Statutes § 286–251 (Supp.
2000) states that " 'Director' means the admin-
istrative director of the courts or any other per-
son within the judiciary appointed by the di-
rector to conduct administrative reviews or
hearings or carry out other functions relating to
administrative revocation under this part [ (Part
XIV entitled 'Administrative Revocation of Driv-

er's License and Motor Vehicle Registration') ]."
Hereinafter, "the Director" is also used to desig-
nate the hearing officer.

2. The opinion of the ICA was written by Chief
Judge James S. Burns, and joined by Associate
Judges Corinne K.A. Watanabe and Daniel R.
Foley.

Director's revocation of the driver's license of Respondent/Petitioner–Appellant Jamal Spock (Spock) for Spock's violation of Hawai'i Revised Statutes (HRS) § 291–4 (Supp. 1999).[3] A violation of HRS § 291–4 may be proven in the alternative, that is, by proof that either the arrested driver operated a vehicle while under the influence of alcohol or that the driver operated a vehicle while having a blood alcohol concentration (BAC) level specified or exceeding that specified in the statute. Assuming *arguendo* Spock's BAC test result in this case was suppressible as the ICA held, the Director's alternative finding that Spock had operated his vehicle in violation of HRS § 291–4 was supported in the record and, thus, was an independent ground upon which to sustain revocation.

## I.

On September 8, 1999, Spock was stopped for suspicion of driving under the influence of intoxicating liquor. Upon failing various field sobriety tests, Spock was arrested. After being transported to the Wailuku police station, Spock was given a copy of "AD DUI Form 2" which was read to him by the arresting officer. The form stated that the Director of the Administrative Driver's License Revocation Office (ADLRO) "may" grant a conditional driver's permit to operate a motor vehicle to and from work, to and from "alcoholics anonymous" (AA) classes, and to and from alcohol assessments and the failure to take any BAC test would make Spock ineligible for such a permit. In addi-

tion, the arresting officer told Spock that Spock would be ineligible for a conditional permit if he refused to take a test to determine his BAC level.

Spock, unaware that his prior "alcohol enforcement contacts"[4] disqualified him from the conditional permit in any event, chose to submit to a breath test. The test determined that Spock had a BAC of .183, well above the legal limit of .08. *See supra* note 3. Spock was then charged under HRS § 291–4.

On September 8, the arresting officer issued Spock a notice of revocation of his driver's license for thirty days.

On September 14, the ADLRO issued a notice of administrative decision, sustaining the revocation and revoking Spock's license for life. On September 15, Spock requested an administrative hearing.

On September 27, 1999, an ADLRO administrative hearing pursuant to HRS § 286–259 (Supp.1999)[5] was held at Spock's request. At the hearing, Spock argued that he had been misinformed by the arresting officer's verbal statements regarding his eligibility for the conditional permit. Spock maintained that he did not know his prior alcohol enforcement contacts disqualified him from a conditional permit and if he knew he could not have qualified for the conditional permit, he would not have consented to the breath test.

The hearing officer found that Spock had properly been informed about his eligibility for the permit and rejected Spock's claim

---

3. The relevant section of HRS § 291–4 states as follows:

(a) A person commits the offense of driving under the influence of intoxicating liquor if:
(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or
(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

4. HRS § 286–251 (Supp.1999) defines "alcohol enforcement contact" as follows:

"Alcohol enforcement contact" means any administrative revocation ordered pursuant to this part; any driver's license suspension or revocation imposed by this or any other state or federal jurisdiction for refusing to submit to a test for alcohol concentration in the person's blood; or any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

5. HRS § 286–259(a) states in pertinent part that "[i]f the director administratively revokes the arrestee's license after administrative review, the arrestee may request an administrative hearing to review the decision[.]"

that the arresting officer had known of Spock's prior alcohol enforcement contacts. Alternatively, the hearing officer concluded in her written conclusion of law No. 5 that "irrespective of [Spock]'s breath test result" there was other evidence indicating that Spock had been under the influence of intoxicating liquor:

The Director separately and independently concludes, by a preponderance of the evidence, that irrespective of [Spock]'s breath test result, the remainder of the record nevertheless reflects that [Spock] drove, operated, or was in actual physical control, of the motor vehicle while under the influence of intoxicating liquor.

On October 4, 1999, the hearing officer issued a written decision revoking Spock's driver's license for life and denied Spock a conditional permit.[6]

On October 8, 1999, Spock filed a petition for judicial review with the district court of the second circuit (the district court). On November 22, 1999, the district court entered its decision affirming the revocation of Spock's license.

## II.

On Spock's appeal from the district court's order, the ICA held that the police did, in fact, misinform Spock. According to the ICA, the arresting officer was not required to tell Spock anything about a conditional permit. *See* ICA's opinion at 11. However, because the arresting officer "informed Spock that the [D]irector ... may grant a conditional permit allowing Spock to operate a motor vehicle to/from work, to/from AA classes and to/from alcohol assessment(s)," ICA's opinion at 11, the ICA determined that he should also have informed Spock that "if or because Spock had a prior alcohol enforcement contact within the five years preceding the date of arrest the [D]irector ... cannot grant a conditional permit." *Id.* Citing *State v. Wilson,* 92 Hawai'i 45, 987 P.2d 268 (1999) as "relevant precedent," the ICA ultimately

concluded that like the BAC test result obtained from the driver in *Wilson,* Spock's breath result must be suppressed inasmuch as Spock's consent to the breath test was based on the misleading advice of the police. *See* ICA's opinion at 13.

With respect to the Director's argument that the hearing officer had concluded there was an independent and separate ground for determining that Spock was driving under the influence of alcohol, the ICA held that such arguments "assume the evidence presented at the administrative hearing and the result of the administrative hearing would have been the same had Spock not taken the test" ICA's opinion at 15, and that such an "assumption is without basis in fact." *Id.* Ultimately, the ICA reversed the district court's November 22, 1999 judgment and the hearing officer's October 4, 1999 decision.

In his application for writ of certiorari, the Director maintains that

revocation ... should have been upheld ... because the hearing officer made an express finding, wholly supported by the record, that "irrespective of [Spock]'s breath test result, the remainder of the record nevertheless reflects that [Spock] drove, operated, or was in actual physical control, of the motor vehicle while under the influence of intoxicating liquor."

We concur with the Director on this point and, thus, need not decide in this case the correctness of the ICA's other conclusions.

## III.

In *Wilson,* the arresting officer informed Wilson that a "person who consented to the blood test and failed it would have his or her driving privileges revoked for only three months," 92 Hawai'i at 47, 987 P.2d at 270, although Wilson, in fact, "faced the possibility of revocation of his driving privileges under HRS § 286-261(b) (Supp.1998)[of] anywhere from three months to one·year." *Id.* Under such circumstances, this court con-

---

6. HRS § 286-261(b)(4) (Supp.1999) provided in pertinent part as follows:

   (b) The periods of administrative revocation that may be imposed under this part are as follows:

   . . . .

   (4) For life if the arrestee's driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest[.]

cluded that "the driver cannot be held to have made a knowing and intelligent decision [on] whether to submit to an evidentiary alcohol test," *id.* at 50, 987 P.2d at 273, and ordered the results of the test taken by Wilson suppressed.

However, in *Wilson*, this court further observed that "there is nothing to prevent the prosecution from relying on other relevant evidence of intoxication in order to prosecute Wilson for the criminal offense of [driving under the influence of intoxicating liquor], *e.g.*, the manner in which Wilson was observed to have driven his vehicle, his conduct in performing the requisite alcohol tests, his appearance, demeanor, and other valid police observations of signs of intoxication." *Id.* at 54 n. 14, 987 P.2d at 277 n. 14.

As previously mentioned, HRS § 291-4 provides in the disjunctive that a person commits the offense if the person assumes control of a vehicle while under the influence of an intoxicating liquor *or* assumes control of a vehicle with a BAC level of .08 or more. Therefore, a charge of driving under the influence of intoxicating liquor may be proved under either of such alternative grounds. *See State v. Dow*, 72 Haw. 56, 61–64, 806 P.2d 402, 405–06 (1991) (stating that subsections (a)(1) and (a)(2) of HRS § 291-4 presented different methods of proving a single offense); *State v. Grindles*, 70 Haw. 528, 531, 777 P.2d 1187, 1190 (1989) (holding that "HRS § 291–4(a) provides two alternative means of proving the single offense of driving while under the influence of intoxicating liquor") (footnote omitted).

The hearing officer so ruled, determining that irrespective of the breath test result, there was other evidence that Spock was under the influence of liquor. In this regard, the hearing officer made the following findings:

1. On SEPTEMBER 8, 1999, at 11:58 P.M., in the County of MAUI, the Stopping Officer saw a vehicle, driven by [Spock], that had its car stereo plying [sic] at a loud volume.

2. The Stopping Officer observed [Spock] execute a wide left turn without using a turn signal.

3. The Stopping Officer observed the vehicle cross over the line delineating the merge lane of the roadway.

. . . .

5. While speaking to [Spock], the Stopping Officer smelled a strong odor of liquor coming from [Spock]'s breath.

. . . .

8. The Arresting Officer approached [Spock] and observed [Spock]'s physical signs of intoxication: the Arresting Officer detected a very strong odor of liquor coming from [Spock]'s breath, [Spock]'s eyes were red, watery and bloodshot, [Spock']s complexion was red and flushed, and [Spock]'s speech was slow and slurred.

9. [Spock] told the Arresting Officer that [Spock] had consumed four beers.

10. The Arresting Officer administered the Field Sobriety Test . . . to [Spock]. [Spock] showed signs of impairment on the Horizontal Gaze Nystagmus Test . . . portion of the test.

These findings were sufficient to support the conclusion of law by the hearing officer that "irrespective of [Spock]'s breath test result, the remainder of the record . . . reflected" by a preponderance of the evidence that Spock was operating a vehicle while under the influence of intoxicating liquor. Those findings were not challenged by Spock, and based on the evidence received at the administrative hearing, were supported by the record.[7] *See Farmer v. Administrative Director of Court, State of Hawai'i*, 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000) (stating that "[t]he standard of review [for review of a decision made by a court upon its review of an administrative decision] is one in which this court must

---

7. The hearing officer admitted the police reports into evidence at the hearing. A report of the police officer who stopped Spock states that "[t]he officer upon speaking with SPOCK noted a strong odor of liquor on his breath, [and that he had] slurred speech and red watery eyes." The report indicates that as Spock exited his car, he was "unsteady on his feet, utilizing the vehicle to keep his balance[.]" Another police officer who was summoned by the first officer related in his report that he "detected a very strong odor of liquor coming from [Spock's] breath;" that Spock's "eyes were observed to be red, watery and bloodshot and his face was red" and that "[h]is speech was slurred."

determine whether the court under review was right or wrong in its decision" and that "[j]udicial review of a decision of the Director regarding the revocation . . . is limited to the record of the administrative hearing and the questions whether the Director . . . made a determination that was unsupported by the evidence in the record") (internal quotation marks and citation omitted). Inasmuch as such facts were found by the hearing officer, the ICA erred in holding that the "assumption" that "the evidence . . . at the administrative hearing and the result would have been the same had Spock not taken the test . . . is without basis in fact." ICA's opinion at 15.

## IV.

Accordingly, the January 30, 2001 decision of the ICA is reversed and the district court's November 22, 1999 judgment and the Director's October 4, 1999 decision are reinstated.