117 P.3d 109

**Richard J. DUNAWAY, Petitioner–Appellant**

v.

**ADMINISTRATIVE DIRECTOR OF the COURTS, State of Hawai'i, Respondent–Appellee.**

No. 26616.

Supreme Court of Hawai'i.

July 29, 2005.

As Corrected July 29, 2005.

Earle A. Partington, Honolulu, on the briefs, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, on the briefs, for respondent-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold in this appeal by Petitioner–Appellant Richard Dunaway (Dunaway), from the May 13, 2004 judgment of the district court of the first circuit [1] (the court) affirming the March 29, 2004 decision of the Director of the Administrative Driver's License Revocation Office (Respondent),[2] that *Freitas v. Admin. Dir. of the Courts*, 104 Hawai'i 483, 92 P.3d 993 (2004) [hereinafter, "*Freitas*

---

1. The Honorable Faye Koyanagi presided.

2. Hawai'i Revised Statutes (HRS) § 291E–1 (Supp.2004) states that, " 'Director' means the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews of hearings or carry out other functions relating to

administrative revocation under part III [entitled 'Administrative Revocation Process']." *See Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 115 n. 1, 26 P.3d 1214, 1215 n. 1 (2001). Hereinafter, "Respondent" is used interchangeably to designate the administrative review officer and the hearing officer.

*I* "], and *Freitas v. Admin. Dir. of the Courts,* No. 25323, 108 Hawai'i 31, 116 P.3d 673, 2005 WL 1714179 (July 25, 2005) [hereinafter, *"Freitas II"*], apply, and that as to issues not decided by those cases, (1) Honolulu Police Department (HPD) form 396B, the implied consent form, adequately informs drivers that they have a choice to submit or to refuse a blood or breath alcohol concentration test; (2) the police need only provide statutorily-mandated warnings to drivers suspected of operating a vehicle under the influence of an intoxicant (OUI), hence police need not advise that reasonable suspicion to stop a vehicle and probable cause to arrest must also be established at a revocation hearing; (3) HPD form 396B adequately served notice that the term "vehicle" as it pertained to license revocation encompassed "mopeds" and "vessels"; and (4) the Notice of Administrative Revocation explained the difference between an administrative revocation and a criminal suspension as required under Hawai'i Revised Statutes (HRS) § 291E–34(a)(2) (Supp.2004). In light of our holding we affirm the aforesaid judgment.

## I.

On February 14, 2004, Dunaway was arrested in Kaneohe for operating a vehicle under the influence of an intoxicant, HRS § 291E–61(a) (Supp.2004), and was issued a Notice of Administrative Revocation. Dunaway's revocation for three months was upheld at an administrative review by Respondent on February 23, 2004, based on a blood test result of 0.08 or higher. Dunaway requested a hearing pursuant to HRS § 291E–38 (Supp.2004)[3] and a hearing was held on March 24, 2004, at which time Dunaway appeared through counsel.

**3.** HRS § 291E–38(a) (Supp.2004) states in pertinent part that "after the administrative review, the respondent may request an administrative hearing to review the decision within six days of the date the administrative review decision is mailed. . . ."

**4.** HRS § 291E–38(e) states as follows:

The director shall affirm the administrative revocation only if the director determines that:
(1) There existed reasonable suspicion to stop the vehicle . . . ;

The hearing began with Dunaway's objection to Respondent's procedure of requiring visitors to sign in on a list and produce identification in order to attend the hearing. Dunaway filed a subpoena request for chief adjudicator Ronald Sakata to testify on the justification for the procedure. The hearing officer denied the subpoena request. Security was the justification given for the identification and sign-in procedure. Prior to the hearing, a woman came in and asked to attend Dunaway's hearing, offering to be searched but refusing to show identification or sign the list because this would invade her privacy. Dunaway argued that if the subpoenaed police officers were going to testify, then Dunaway had a right to have members of the public present for his hearing.

The hearing officer stated that the public was not denied access as long as they showed proper identification. Dunaway countered by noting that the public must also sign in to gain access to the hearing and he would waive examination of the police officers if the public was so denied.

The hearing officer explained the procedure she would use in the hearing. When asked whether the hearing was de novo or a review of the administrative review decision, the hearing officer responded that the hearing is de novo under HRS § 291E–38(e).[4] The hearing officer explained that the police have the initial burden of proof which may be satisfied with documentary evidence received pursuant to HRS § 291E–38(h), sworn statements required by HRS § 291E–36 (Supp. 2004), and documents which pertain to prior alcohol enforcement contact as specified by HRS § 291E–38(f). Upon reviewing the police report, the hearing officer concluded that

(2) There existed probable cause to believe that the respondent operated the vehicle while under the influence of an intoxicant; and
(3) The evidence proves by a preponderance that:
 (A) The respondent operated the vehicle while under the influence or an intoxicant; or
 (B) The respondent operated the vehicle and, after being informed of the sanctions of this part, refused to submit to a breath, blood, or urine test.

the police had satisfied their initial burden of proof. The report included the Preliminary Alcohol Screening report, the field sobriety test report, and the sworn statements of Arresting Officer Shermon Dowkin dated February 14, 2004, transporting Officer Michael Moya (phonetic spelling), Intoxilyzer Operator Daron Akiyama (Form HPD 396D) dated February 14, 2004, and Intoxilyzer Supervisor Lawrence Santos (Form HPD 396E) dated February 5, 2004.

Dunaway objected, arguing that HRS § 291E–38(a) states that the purpose of the hearing is to review the administrative review decision and nothing in HRS § 291E–38(e) indicates the hearing is de novo. Dunaway then asked that the hearing officer follow a procedure as set forth by him, claiming that the "administrative revocation scheme contemplates that this procedure will be followed pursuant to HRS § 291E–38."[5] The procedure recommended by Dunaway would mandate a hearing officer to rescind the revocation and end the hearing if the hearing officer was satisfied that a three-prong test of (1) reasonable suspicion to stop the vehicle, (2) probable cause to believe respondent is OUI, and (3) proof of OUI, had not been satisfied. If the hearing officer was satisfied that the test had been met, then the respondent would be given the opportunity to offer evidence to refute any part of the test or any prior alcohol contact.

The hearing officer declined to follow Dunaway's requested procedure. In the hearing, Dunaway objected to the use of some of the documents contained in the police report, arguing that only the sworn statement of the arresting officer (the arrest report) and evidence of prior alcohol or drug enforcement contacts were admissible. Dunaway objected to the consideration of hearsay in any of the sworn statements except to establish reasonable suspicion to stop his vehicle. His objections were overruled.

Dunaway also objected to HPD form 396B which he had received and signed, claiming that the form failed to inform him of the distinction between an administrative revocation and a criminal suspension as required by HRS § 291E–34(a)(2). Dunaway also argued that while the form informed him that driving on a public street meant he had consented to a blood or breath test, the form failed to disclose that drivers have a right to withdraw that consent under *State v. Entrekin*, 98 Hawai'i 221, 223, 47 P.3d 336, 338 (2002). Finally, Dunaway argued that the form failed to inform him that the administrative revocation of his license and privilege to operate a "vehicle" applied to a "vessel" and a "moped."

None of the subpoenaed witnesses testified. In a decision dated March 29, 2004, the hearing officer imposed a one-year revocation of Dunaway's driver's license. The hearing officer found that the hearing was conducted

**5.** The written procedure proposed by Dunaway stated as follows:

The hearing officer receives into evidence *only* the sworn statements described in HRS § 291E–36(a)(1), (2), and (3) and *competent* evidence of any prior alcohol/drug enforcement contacts (HRS § 291E–38(g)and(h));

1. If the hearing officer is satisfied that the three-prong test has not been met, the hearing officer rescinds the revocation and the hearing is over (HRS § 291E–38(e)); the three-prong test is (1) reasonable suspicion to stop, (2) probable cause to believe respondent [O]UI, and (3) proof of [O]UI *(Kernan v. Tanaka*, 75 Haw. 1, 30, 856 P.2d 1207, 1222 (1993));

2. If the hearing officer is satisfied that the three-prong test has been met, the hearing officer so finds and the respondent is given the opportunity to offer evidence to refute any part of the three prong test or any prior alcohol contact. *(Id.);*

3. If there is any other *competent* evidence which has become relevant by virtue of the respondent's evidence, whether documents in the file, through witnesses, or otherwise, the hearing officer may receive such evidence (HRS § 291E–38(d)(3));

4. The hearing officer makes findings and either rescinds or upholds the revocation (HRS § 291E–38(d)(6));

5. If the revocation is upheld, the hearing officer makes findings as to any prior alcohol/drug enforcement contacts and the consequences thereof (HRS § 291E–41(b)).

Pursuant to HRS § 291E–38(a) and according to paragraph 7(b) of "INFORMATION ABOUT REVOCATION PROCEDURES" on the back of page 1 on the Notice of Administrative Revocation, the purpose of this hearing is "to review the [administrative review] decision," *not* conduct a *de novo* hearing. Thus, the hearing officer has no power to increase the revocation period set at the administrative review.

pursuant to HRS § 291E–38 which prescribes the administrative revocation hearing procedure. The hearing officer did not agree with Dunaway's argument that the three-prong test was in conflict with her findings.

The decision stated that an arresting officer is not required to explain every consequence or aspect related to refusing to take an alcohol concentration test or to taking the test and failing it. The hearing officer further found, by the preponderance of the evidence, and without consideration of the alcohol concentration test result, that Dunaway was operating a vehicle while under the influence of an intoxicant.[6] Finally, the decision stated that the police are not required to explain the distinction between a criminal prosecution and administrative revocation notwithstanding HRS § 291E–34(a)(2). The hearing officer refused to hear Dunaway's arguments regarding the issue of public access.

In her decision, the hearing officer cited unpublished district court decisions and two summary disposition orders of this court. Dunaway sought judicial review. In a May 13, 2004 decision, the court affirmed the hearing officer's decision.

## II.

On appeal, Dunaway argues that (1) the court erred in sustaining Respondent's decision (a) to convene the administrative license revocation hearing without permitting the general public full and open access and (b) to deny a hearing on the validity of Respondent's security procedure; (2) the court erred in ruling that Dunaway had not been denied due process of law based on (a) a seeming contradiction in HRS § 291E–38(a) which declares the revocation hearing will "review the [administrative review] decision" yet allows motorists to call witnesses and offer evidence, suggesting that the hearing is

de novo, (b) the lack of a uniform hearing procedure, (c) the admission of Respondent's entire file, (d) the hearing officer's adherence to *Desmond v. Admin. Dir. of the Courts,* 91 Hawai‘i 212, 219, 982 P.2d 346, 353 (App. 1998) [hereinafter *Desmond I* ] (advising hearing officers to inform the parties at the beginning of the hearing of the procedure to be followed but not requiring hearing officers to follow the procedure set forth by petitioner), *rev'd on other grounds, Desmond v. Admin. Dir. of the Courts,* 90 Hawai‘i 301, 978 P.2d 739 (1999) [hereinafter *Desmond II* ], and (e) the apparent disregard of the procedure set forth in HRS § 291E, Part III, which requires a valid chemical test result or refusal to confer jurisdiction on Respondent; (3) the court erred in upholding the revocation although HPD form 396B (a) failed to relate that Dunaway had a right to withdraw the consent to a blood or breath test that was implied by his operation of a vehicle on a public street, (b) implied that the only issue in an administrative revocation is whether the chemical alcohol test result reveals a blood alcohol concentration[7] (BAC) in the driver of over 0.08 or that the test was refused, and (c) failed to inform Dunaway that the word "vehicle" in HRS § 291E–1 includes "vessel" and "moped"; (4) the court erred in holding that HRS § 291E–34(a)(2) was not violated in view of the fact that HPD form 396B does not adequately explain the distinction between administrative revocation and criminal suspension; and (5) the hearing officer reversibly erred in citing to unpublished district court decisions and summary disposition orders of this court.

## III.

 Several arguments raised by Dunaway have been resolved previously. In regards to argument (1)(a), we have held that any restriction on the right to a public hearing must comport with the three-part test

---

6. The hearing officer relied on the documented evidence to support her findings. This included the sworn statement from arresting officer Shermon Dowkin of Dunaway's erratic driving where he weaved all over the road. The arresting officer's sworn statement also described Dunaway as having "red, bloodshot, watery eyes, slur to his speech, flushed complexion, along with a very strong alcoholic type beverage odor on his breath when he spoke."

7. HRS § 291E–1 (Supp.2004) states that " '[blood] [a]lcohol concentration' means either grams of alcohol per hundred milliliters or cubic centimeters of blood or grams of alcohol per two hundred ten liters of breath."

adopted in *Freitas I*.[8] Subsequently, a majority of this court affirmed that Respondent's procedure of requiring the public to sign in and produce identification in order to attend license revocation hearings is valid. *Freitas II*, 108 Hawai'i at 37, 116 P.3d at 679.

Dunaway correctly contends in (1)(b) that Respondent erred in refusing to hold a hearing on the validity of the security procedure inasmuch as in *Freitas I*, this court decided that a respondent has a right to a hearing. 104 Hawai'i at 489, 92 P.3d at 999. However, *Freitas II* held that the Respondent's sign-in and identification procedure for members of the public wishing to attend administrative license revocation hearings comports with due process. *Freitas II*, 108 Hawai'i at 37, 116 P.3d at 679. The facts in *Freitas II* are nearly identical to the facts in this case. Because of the doctrine of stare decisis, *Freitas II* acts as precedent and it is unnecessary to hold a new hearing on the same issue. *See State v. Garcia*, 96 Hawai'i 200, 205, 29 P.3d 919, 924 (2001) (stating that "[p]recedent is an adjudged case or decision of a court, considered as furnishing an example of authority for an identical or similar case afterwards arising or a similar question of law[ ] . . . [and the] policy of courts [is] to stand by precedent and not to disturb settled points" (internal quotation marks, citations, and brackets omitted)).

With respect to argument (2)(a), Dunaway proposes the procedure he submitted in the hearing would reconcile the purported contradiction raised by HRS § 291E–38(a), which states the hearing's purpose is to review the administrative review decision, and HRS §§ 291E–38(d) and (e), which allow for witnesses to be examined and testimony to be taken in a de novo hearing. In *Freitas II*, this court found no contradiction in HRS § 291E, Part III and held that a procedure which permits notice and hearing would not violate due process.[9] *Freitas II*, 108 Hawai'i at 44–45, 116 P.3d at 686–87.

In argument (2)(b), Dunaway argues that due process requires that a uniform procedure for administrative hearings be known in advance and that hearings have a meaningful structure. Again, in *Freitas II*, we "observe[d] that procedural due process requires that a person have an 'opportunity to be heard at a meaningful time in a meaningful manner'", 108 Hawai'i at 44, 116 P.3d at 686 (quoting *Farmer v. Admin. Dir. of the Courts*, 94 Hawai'i 232, 238, 11 P.3d 457, 463 (2000)), and because the hearing is deemed to provide such an opportunity, "[Respondent's] program has been examined and found not to violate due process[,]" *id.* at 44–45, 116 P.3d at 686–87 (citing *Farmer*, 94 Hawai'i at 238, 11 P.3d at 463; *Kernan v. Tanaka*, 75 Haw. 1, 25–32, 856 P.2d 1207, 1219–22 (1993); *Desmond I*, 91 Hawai'i at 220, 982 P.2d at 354).

As to argument 2(c), Dunaway asserts that most of Respondent's file which was admitted as evidence in the hearing should have been disallowed and that HRS § 291E–38(g) and (h) only permit the motorist's prior alcohol enforcement contacts and sworn statements described in HRS § 291E–36 into evidence. This court stated that "admission of [Respondent's] file and police report may be barred if irrelevant or prejudicial." *Freitas II*, 108 Hawai'i at 46, 116 P.3d at 688. However, in *Freitas II*, we held that the petitioner "failed to demonstrate how admitting the entire [Respondent's] file and police report contravenes the administrative revocation statute, and violates due process" because the petitioner made no showing "that

---

8. The three-part test is as follows: "[1] that the regulation serve an important governmental interest; [2] that this interest be unrelated to the content of the information to be disclosed in the proceeding; and [3] that there be no less restrictive way to meet that goal." *Freitas I*, 104 Hawai'i at 489, 92 P.3d at 999 (adopting the test outlined in *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir.1983) (citing *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968))) (emphasis omitted).

9. *Freitas II* indicated that a procedure like the one proposed by Dunaway could be adopted if the hearing officer so chooses. *Freitas II*, 108 Hawai'i at 44 n. 13, 116 P.3d at 686 n. 13.

the admission of the entire record or the police report was irrelevant or prejudicial." *Id.* at 45–46, 116 P.3d at 687–88. *See id.* at 46 n. 19, 116 P.3d at 688 n. 19 (citing *Desmond II*, 90 Hawai'i at 301–02, 978 P.2d at 739–40, for the proposition that the only evidence a hearing officer must exclude are (a) unsworn statements and (b) irrelevant and prejudicial evidence); *id.* at 46 n. 20, 116 P.3d at 688 n. 20 (noting in *Miller v. Tanaka,* 80 Hawai'i 358, 366–67, 910 P.2d 129, 137–38 (App.1995), *cert. denied,* 80 Hawai'i 357, 910 P.2d 128 (1996) that the ICA determined that the Director did not abuse his discretion in admitting the petitioner's entire file into evidence when the petitioner failed to identify which items in the file were objectionable). Similarly, in this case, Dunaway has made no showing that specific documents in Respondent's file or the arrest report were irrelevant or prejudicial. Thus, while the hearing officer is not required by statute to admit the arrest report for review, she did not reversibly err when she did so. *Freitas II,* 108 Hawai'i at 46, 116 P.3d at 688. Relatedly, and in connection with argument 2(d), Dunaway contends that *Desmond I* should be overturned. But in *Freitas II,* this court reaffirmed *Desmond I* in response to the same argument. *Id.* at 44–45, 116 P.3d at 686–87.

■ With respect to argument (2)(e), this court had previously ruled that a valid test result over 0.08 or a refusal to take a chemical test is not a jurisdictional prerequisite for a valid administrative license hearing. This court held in *Freitas II* that there is no "indicat[ion]" that notice of the implied consent law was intended to act as a jurisdictional prerequisite to a license revocation hearing." *Id.* at 46, 116 P.3d at 688. *See Spock v. Admin. Dir. of the Courts,* 96 Hawai'i 190, 192–94, 29 P.3d 380, 382–84 (2001) (upholding license revocation despite suppression of breath test results based upon the hearing officer's separate findings of being under the

influence); *State v. Wilson,* 92 Hawai'i 45, 53–54 n. 14, 987 P.2d 268, 276–77 n. 14 (1999) (suppressing test results because the consequences of consenting to or refusing to take the chemical alcohol test was not properly conveyed to the motorist but allowing that "there is nothing to prevent the prosecution from relying on other relevant evidence of intoxication").

Dunaway's fifth argument is that the hearing officer reversibly erred in citing to unpublished district court decisions and summary disposition orders of this court to justify her decision. However, in *Freitas II,* this court agreed with the argument that a lower court decision will be reversed only if "the legal result or position adopted by the lower court is found to be erroneous as a matter of law." *Freitas II,* 108 Hawai'i at 47, 116 P.3d at 689. Because the hearing officer's decision did not involve any reversible error as held herein, the court did not reversibly err in upholding the hearing officer's decision.

We now consider issues raised by Dunaway that have not been previously decided.

## IV.

### A.

■ In argument (3)(a), Dunaway maintains that HPD form 396B failed to disclose that he had a right to withdraw his consent to taking a breath or blood test. Dunaway relies on *Entrekin,* which stated that "[t]he implied consent statute deems any person who operates a motor vehicle or a moped on the public highways of the state to have consented 'to a test or tests ... of [their] breath, blood, or urine' for the purposes of determining whether they are driving under the influence of drugs or alcohol[.]" 98 Hawai'i at 223, 47 P.3d at 338. *Entrekin* noted that HRS § 286–151.5 [10] "permits drivers to withdraw their consent." *Id.* (citation omitted). However, *Entrekin* is inapposite in that it was concerned with the statutory exception to the implied consent law in HRS

---

10. *Entrekin* noted that

HRS § 286–151.5 provided in relevant part: "If a person under arrest for driving after consuming a measurable amount of alcohol, pursuant to section 291–4.3, refuses to submit

to a breath or blood test, none shall be given, except as provided in section 286–163[.]" HRS § 286–151.5 has been repealed and reenacted, in amended form, as HRS § 291E–15[.] 98 Hawai'i at 223 n. 3, 47 P.3d at 338 n. 3.

§ 291E–21 that applied in the event of "'a collision resulting in injury to or the death of any person.'"[11] *Id.* at 227, 47 P.3d at 342 (quoting HRS § 286–163). Unlike *Entrekin,* this case does not involve a situation where police were legally authorized to obtain a blood sample without Dunaway's consent.

Here, Dunaway was given notice about the choice afforded him to take or refuse a test. The form informed the driver of the "consequences for taking *or* refusing to take a test" (emphasis added) and the consequences "if you choose to take a test" and "if you refuse to take a test."[12] Although there is no express mention of a driver's withdrawal of consent under HPD form 396B, paragraph 9 of the form establishes the consequences for taking or refusing to take a blood alcohol or breath test. *See* HRS §§ 291E–41(d), (e) (Supp.2004) and 291E–44(a)(2)(B) (Supp. 2004).[13] Because the form set out the consequences of submitting to or declining a blood or breath test, it adequately conveyed that refusal was the alternative and, thus, the

opposing option to consenting to a test. That a choice was provided obviously indicated that in the event consent was not given, no test would be administered.

In *State v. Rodgers,* 99 Hawai'i 70, 75, 53 P.3d 209, 214 (2002), this court rejected the motorist's argument that her consent to the chemical alcohol test was not knowing nor intelligent because the form did not define "prior alcohol enforcement contacts[,]" as "[n]othing before ... [the court] explains why or how ... [the petitioner] could have been misled into attributing the various interpretations she offers to the relevant term[.]" Likewise, the form in the instant case makes it plain that Dunaway had the choice to take the test or to refuse. Hence, Dunaway knew that refusal was a course open to him, but one that would result in legal sanctions.

**B.**

■ In argument (3)(b), Dunaway asserts that HPD form 396B incorrectly implies that

---

**11.** *Entrekin* concerned the scope of HRS § 291E–21 which states in subsection (a) that "[n]othing in this part shall be construed to prevent a law enforcement officer from obtaining a sample of breath, blood or urine, from the operator of any vehicle involved in a collision resulting in injury to or the death of any person, as evidence that the operator was under the influence of an intoxicant." HRS § 291E–21(a) (Supp. 2004) (replaced repealed statute HRS § 286–163 (1993 & Supp.2000)).

**12.** HPD form 396B states in the relevant part:

9. The administrative revocation of driver's license and motor vehicle registration *consequences for taking or refusing to take a test are as follows:*
(a) *If you refuse to take any tests* and your record shows no prior alcohol or drug enforcement contact during the five years preceding the date ... your license ... will be revoked for a period of one year.
*However, if you choose to take a test and fail it,* your license and privilege to operate a vehicle will be revoked for a minimum of three months up to a maximum of one year.
(b) If you refuse to take any tests and your record shows *one* prior alcohol or drug enforcement contact during the five years preceding the date ... your license ... will be revoked for a period of two years.
*However, if you choose to take a test and fail it,* your license and privilege to operate a vehicle ... will be revoked for a minimum of one year up to a maximum of two years.

(c) *If you refuse* to take any tests and your record shows two prior alcohol or drug enforcement contact during the seven years preceding the date ... your license ... will be revoked for a period of four years.
However, *if you choose* to take a test and fail it, your license and privilege to operate a vehicle ... will be revoked for a minimum of two years up to a maximum of four years.
(d) *If you refuse* to take any tests and your record shows three or more prior alcohol or drug enforcement contact during the ten years preceding the date ... your license ... will be revoked for life.
*If you choose* to take a test and fail it, your license and privilege to operate a vehicle ... will be revoked for life.
....
(g) *If you refuse* to take any test, the administrative revocation proceeding will not be terminated, and you will not qualify for a conditional permit.
(emphases added.)

**13.** HRS § 291E–41(d) states that a refusal to be tested after being informed of the sanctions will result in the maximum length of license revocation possible. HRS § 291E–41(e) outlines sanctions for repeat intoxicated drivers (drivers who have been criminally convicted for OUI or have had prior alcohol enforcement contact within a specified number of years) who refuse chemical alcohol testing. HRS § 291E–44(a)(2)(B) prevents conditional license permits from being issued to motorists who have refused chemical alcohol testing.

the only issue at a revocation hearing is whether a test result is over 0.08 or is refused when, in fact, the police must also establish reasonable suspicion to stop and probable cause to believe a driver is OUI. (Citing *Kernan*, 75 Haw. at 30, 856 P.2d at 1222.) Dunaway also relies on *Wilson*, 92 Hawai'i at 49, 987 P.2d at 272 (holding that "Hawaii's implied consent scheme *mandates* accurate warnings to enable a driver to knowingly and intelligently consent to or refuse a chemical alcohol test") and *State v. Feldhacker*, 76 Hawai'i 354, 357, 878 P.2d 169, 172 (1994) (holding that an older version of the Respondent's notice was void because it contained statements of defendant's rights that conflicted with the then existing implied consent statute, HRS § 286–253). Dunaway asserts that his license revocation should be reversed as a remedy.[14] In response to argument (3)(b), Respondent argues that there is no requirement under the Hawai'i statutes that the arrested motorist be informed about the entire administrative revocation process. Because Dunaway was provided with a notice which met the statutory requirements under HRS chapter 291E, Part III, Respondent contends that argument (3)(b) is without merit.

We conclude that under the circumstances, the police need only provide statutorily-mandated warnings. HRS § 291E–34(b)(4) (Supp.2004) requires the notice indicate that "the ... [driver] was informed of the sanctions of this part and of the consequences of refusing to be tested for alcohol concentration or drug content in the blood or urine and whether the respondent consented to be tested." Notification of the elements of a stop and arrest for OUI required to be proved at the revocation hearing is not mandated by any statute cited by Dunaway. The cases cited by Dunaway do not support his proposi-

tion. Therefore, we hold that HPD form 396B need not notify drivers that the police must establish reasonable suspicion to stop and probable cause to believe a driver is OUI in an administrative license revocation hearing, in the absence of a statutory directive to that effect.

## C.

Dunaway further claims in argument (3)(c) that HPD form 396B failed to inform him that, in the event of a license revocation prohibiting the operation of a "vehicle,"[15] the term "vehicle" includes "mopeds" and "[water] vessels." *See* HRS § 291E–1 (Supp.2004). Dunaway argues that this information would have been material in his decision on whether to consent to a test.[16]

In response to argument (3)(c), Respondent asserts that the form did adequately put Dunaway on notice that a "vehicle" includes a "moped" or a "vessel" because Respondent claims that common sense and a natural reading of the term "vehicle" logically includes mopeds and vessels. We observe that the form states that "[a]ny person who operates a vehicle upon a public way, street, road or highway or on or in the waters of the State shall be deemed to have given consent to a test or tests." Under HRS § 291E–1, "a 'vehicle' includes a motor vehicle, moped, and a vessel." "Vehicle" is defined as a "means of carrying or transporting something." *Webster's Tenth Collegiate Dictionary* 1309 (1993). We believe the term "vehicle" is a term of ordinary usage and is broad enough to inform a person of ordinary intelligence that it would include a means of ground transportation such as a moped. Therefore,

---

14. *But see Voellmy v. Broderick*, 91 Hawai'i 125, 129–30, 980 P.2d 999, 1003–04 (App.1999) (determining that an arresting officer's failure to indicate that the notice of administrative revocation shall serve as a temporary driving permit as mandated by statute does not necessarily require reversal of a license revocation).

15. HRS § 291E–41(b)(1) (Supp.2004) states in the pertinent part that "[t]he periods of administrative revocation with respect to a license and privilege to operate a vehicle, and motor vehicle

registration if applicable, that shall be imposed under this part are as follows:" and lists the periods which vary based on the number of prior alcohol or drug enforcement contacts.

16. Dunaway claims that if he had "known that he could lose not only his license to drive a vehicle, but his ability to operate a vessel or drive a moped, he might well have agreed to take a test." However, as Respondent correctly notes, Dunaway *did agree* to take the test.

Dunaway's claim that he was unaware that a moped was a vehicle must fail.[17]

HPD form 396B also puts Dunaway on notice that the term "vehicle" includes a "vessel." As mentioned *supra*, the form stated that the term vehicle also refers to "a vehicle ... in the waters of the State." This is consistent with HRS § 291E–1, which states that "a 'vessel' means all description of watercraft that are used and are capable of being used as a means of transportation on or in the water." Hence, the HPD form 396B references to "a vehicle ... in the waters" provided notice to Dunaway that a "vehicle" operational in waters would refer to a means of transportation employed in the water.[18] Therefore, Dunaway was not erroneously informed as to the word "vehicle."

### D.

With respect to argument (4), Respondent argues that the notice does adequately explain the difference between an administrative revocation and a criminal suspension as required under HRS § 291E–34(a)(2) (Supp.2004). In relevant part, HRS § 291E–34(a)(2) states that "[t]he notice of administrative revocation shall provide, at a minimum and in clear language, the following general information relating to administrative revocation: ... An explanation of the distinction between administrative revocation and a suspension or revocation imposed under section 291E–61 or 291E–61.5."

The backside of the notice states that

*[t]he administrative revocation process is a civil administrative proceeding that is separate and distinct from criminal prose-*

*cution.* Criminal charges filed pursuant to H.R.S. § 291E–61 may be prosecuted concurrently with the administrative proceeding. If convicted, your license will be suspended or revoked, you will be required to attend a substance abuse rehabilitation program, and you may have to pay a fine, perform community service, and/or serve a prison term.... If your license is administratively revoked under the Administrative Revocation Process and you are also convicted of an offense under H.R.S. § 291E–61 arising out of the same occurrence, the total period of revocation imposed in the two proceedings shall not exceed the longer period of revocation imposed in either proceeding.

(Emphasis added.) Because the form explains the essential difference between the civil nature of the revocation proceeding and the penal characteristics of the criminal proceeding, the various consequences that flow from each, and the interrelationship between the two with respect to driving privileges, we conclude it satisfies the directive of HRS § 291E–34(a)(2) that "general information" about the "distinction" between the two be explained.

### V.

For the foregoing reasons the May 13, 2004 judgment of the court is affirmed.

---

**17.** We note that although the chapter on the use of intoxicants and vehicles specifically includes mopeds in its definition of motor vehicles in HRS § 291E–1, the Hawai'i Highway Safety Act, section 286, defines "vehicle" as "every device in, upon, or by which any person or property is or may be transported or drawn upon a highway, but *excludes* devices moved by human power or devices used exclusively upon stationary rails or tracks and *mopeds*." HRS § 286–2 (1993) (emphases added). However, we consider the form as it relates to HRS chapter 291E.

**18.** The form also states that "[i]f you are convicted of operating a vehicle under the influence of intoxicants or have your vehicle license or privilege to operate a vessel suspended or revoked, you may be ordered to reimburse the county for the cost of a blood or urine test or both."