53 P.3d 209

STATE of Hawai'i, Plaintiff–Appellant,

v.

Carolyn J. RODGERS, Defendant–
Appellee.

No. 24462.

Supreme Court of Hawai'i.

July 1, 2002.

Reconsideration Denied July 17, 2002.

Mangmang Qiu Brown, Deputy Prosecuting Attorney, on the briefs, for plaintiff-appellant.

Timothy I. MacMaster, Kaneohe, on the briefs, for defendant-appellee.

MOON, C.J., LEVINSON, NAKAYAMA, RAMIL, and ACOBA, JJ.

Opinion of the Court by MOON, C.J.

Plaintiff-appellant the State of Hawai'i [hereinafter, the prosecution] appeals from the findings of fact, conclusions of law, and order of the District Court of the First Circuit, the Honorable I. Norman Lewis presiding, granting defendant-appellee Carolyn J. Rodgers's motion to suppress evidence of breath alcohol test results. The prosecution claims that: (1) Rodgers was correctly informed of the eligibility requirements for a conditional driver's license; and (2) the definition of "prior alcohol enforcement contact"[1] was neither relevant nor material to

1. Hawai'i Revised Statutes (HRS) § 286–251 (Supp.2000), applicable at the time of Rodgers's arrest, defined "alcohol enforcement contact" as:

(1) Any administrative revocation ordered pursuant to this part;

(2) Any suspension or revocation of any driver's license or motor vehicle registration,

Rodgers's decision to take a breath test and did not affect the knowing and intelligent nature of Rodgers's consent. Under the circumstances of this case, we agree with the prosecution. Accordingly, we vacate the district court's July 3, 2001 findings of fact, conclusions of law, and order suppressing evidence of Rodgers's alcohol test and remand this case for further proceedings.

## I. BACKGROUND

On March 19, 2001, Rodgers was arrested for allegedly driving under the influence of intoxicating liquor [hereinafter, DUI], in violation of HRS §§ 291–4(a)(1) and (a)(2) (Supp.2000).[2] On May 9, 2001, Rodgers filed a motion to exclude evidence of her breath alcohol test results. A hearing on Rodgers's motion was held on June 22, 2001.[3]

At the hearing on Rodgers's motion, the parties stipulated to the following facts: (1) Rodgers was arrested for DUI under HRS §§ 291–4(a)(1) and (a)(2); (2) while Rodgers was under arrest, a police officer took possession of her driver's license; (3) the police officer read to Rodgers the Honolulu Police Department (HPD) 396B1 and 386B2 forms [hereinafter, collectively, HPD 396B forms] concerning the consequences of passing, failing, and refusing an alcohol concentration test;[4] (4) a true and accurate copy of the HPD 396B forms were attached to Rodgers's motion; (5) Rodgers agreed to submit to a breath alcohol test for the purpose of determining alcohol concentration as described in HRS § 286–151(a) (Supp.2000)[5]; (6) Rodgers submitted to a breath test for the purpose of determining alcohol concentration; (7) the alcohol concentration test indicated Rodgers had a breath alcohol concentration over the legal limit of .08 grams of alcohol per two hundred ten liters of breath; and (8) this was Rodgers's first arrest for DUI within the past five years.

Rodgers argued that the HPD 396B forms contained incorrect and insufficient language. Specifically, she claimed that the forms: (1) erroneously informed her that she would not be eligible for a conditional driver's permit if she refused to submit to an alcohol concentration test; and (2) failed to define "prior alcohol enforcement contacts." The prosecution countered that Rodgers was accurately informed of the eligibility requirements for a conditional driver's permit and that the definition of "prior alcohol enforcement contacts" was neither relevant nor material to Rodgers's decision to take the breath alcohol test because she had no prior arrests for DUI within the past five years.

The district court granted Rodgers's motion. The court's findings of fact restate the

---

or both, imposed by this or any other state or federal jurisdiction for refusing to submit to a test for alcohol concentration in the person's blood; or

(3) Any conviction in this or any other state or federal jurisdiction for driving, operating, or being in physical control of a motor vehicle while having an unlawful concentration of alcohol in the blood, or while under the influence of alcohol.

2. HRS § 291–4(a) provides:

A person commits the offense of driving under the influence of intoxicating liquor if:

(1) The person operates or assumes actual physical control of the operation of any vehicle while under the influence of intoxicating liquor, meaning that the person concerned is under the influence of intoxicating liquor in an amount sufficient to impair the person's normal mental faculties or ability to care for oneself and guard against casualty; or

(2) The person operates or assumes actual physical control of the operation of any vehicle with .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood or .08 or more grams of alcohol per two hundred ten liters of breath.

3. The transcript indicates that multiple defendants presented similar motions to dismiss in their individual cases and joined in the argument presented in this case.

4. The HPD 386B forms state in relevant part: "If you refuse to take any test, the administrative revocation proceeding will not be terminated, and you will not qualify for a conditional permit."

5. HRS § 286–151(a) provides:

Any person who operates a motor vehicle or moped on the public highways of the State shall be deemed to have given consent, subject to this part, to a test or tests approved by the director of health of the person's breath, blood, or urine for the purpose of determining alcohol concentration or drug content of the persons's breath, blood, or urine, as applicable.

facts stipulated by the parties.[6] Based upon its findings, the district court concluded:

 1. In *State v. Santos*, 95 Hawai'i 86, 18 P.3d 948 (App.2001)[,*overruled on other grounds, State v. Garcia*, 96 Hawai'i 200, 29 P.3d 919 (2001)], the Intermediate Court of Appeals for the State of Hawai'i noted that a reasonable person is as much interested in a conditional permit during the period of revocation as he/she is concerned with the length of the revocation.

 2. Therefore, the misinformation in the present case was material and harmful.

 3. Consequently, the Defendant did not knowingly and intelligently consent to the breath test.

 4. Accordingly, the evidence of the breath test result in the present case must be suppressed.

The court's order granting Rodgers's motion was filed on July 3, 2001, and the prosecution timely appealed.

## II. *STANDARDS OF REVIEW*

A. *Review of a Motion to Suppress Evidence*

 ■ An appellate court reviews a ruling on a motion to suppress *de novo* to determine whether the ruling was "right" or "wrong." *State v. Jenkins*, 93 Hawai'i 87, 100, 997 P.2d 13, 26 (2000).

B. *Statutory Interpretation*

 ■ The interpretation of a statute is a question of law reviewed *de novo*. *Farmer v. Administrative Director of Court*, 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000) (citation omitted).

## III. *DISCUSSION*

A. *Eligibility for a Conditional Driver's Permit*

 The prosecution argues that the district court erred in concluding, implicitly, that

Rodgers was misinformed as to the statutory requirements for obtaining a conditional driver's permit. To determine whether the HPD 386B forms misstated the applicable law, we must examine the statutes relevant to the issuance of conditional driver's permits. This court has stated:

> The starting point in statutory construction is to determine the legislative intent from the language of the statute itself. Our foremost obligation when interpreting a statute is to ascertain and give effect to the intention of the legislature, which is obtained primarily from the language contained in the statute itself. We read statutory language in the context of the entire statute, and construe it in a manner consistent with its purpose. A rational, sensible and practicable interpretation of a statute is preferred to one which is unreasonable or impracticable. The legislature is presumed not to intend an absurd result, and legislation will be construed to avoid, if possible, inconsistency, contradiction, and illogicality.

*State v. Bautista*, 86 Hawai'i 207, 209–10, 948 P.2d 1048, 1050–51 (1997) (citations, brackets, and quotation marks omitted).

 The criteria for obtaining a conditional driver's permit is set forth in HRS § 286–264(a) (Supp.2000),[7] which states in pertinent part:

> At the administrative hearing, the director, at the request of *an arrestee who is subject to an administrative revocation period as provided in section 286–261(b)(1)*, may issue a conditional driver's permit that will allow the arrestee, after a minimum period of absolute license revocation of thirty days, to drive for the remainder of the revocation period, provided that one or more of the following conditions are met:
>
> (1) The arrestee is gainfully employed in a position that requires driving and will be discharged if the arrestee's

---

6. The court's findings of fact also include findings that the parties stipulated that the defense's motion would be treated as a motion to suppress evidence and that the prosecution stipulated that it would not object to the untimeliness of the filing of the defendant's motion.

7. Effective January 1, 2002, HRS §§ 286–151 through 286–163 were repealed and recodified in HRS chapter 291E.2000 Haw. Sess. L. Act 189, §§ 23–29 at 406–32.

driving privileges are administratively revoked; or

(2) The arrestee has no access to alternative transportation and therefore must drive to work or to a substance abuse treatment facility or counselor for treatment ordered by the director under section 286–261.

(Emphasis added.) HRS § 286–264(a) does not expressly indicate that submitting to an alcohol concentration test is a condition of receiving a conditional driver's permit. Therefore, we must examine which persons are subject to the administrative revocation period specified under HRS § 286–261(b)(1) to determine if an alcohol concentration test is required to obtain a conditional driver's permit.

HRS § 286–261 (Supp.2000) states in pertinent part:

(b) The periods of administrative revocation with respect to a driver's license and motor vehicle registration, if applicable, that shall be imposed under this part are as follows:

(1) A minimum of three months up to a maximum of one year revocation of driver's license, if the arrestee's driving record shows no prior alcohol enforcement contacts during the five years preceding the date of arrest;

(2) A minimum of one year up to a maximum of two years revocation of driver's license and all registrations of motor vehicles registered to the arrestee if the arrestee's driving record shows one prior alcohol enforcement contact during the five years preceding the date of arrest;

(3) A minimum of two years up to a maximum of four years revocation of driver's license and all registrations of motor vehicles registered to the arrestee if the arrestee's driving record shows two prior alcohol enforcement contacts during the seven years preceding the date of arrest;

(4) Lifetime revocation of driver's license and prohibition on all subsequent motor vehicles registrations by the arrestee if the arrestee's driving record shows three or more prior alcohol enforcement contacts during the ten years preceding the date of arrest; or

(5) For arrestees under the age of eighteen years, the revocation of the driver's license for the period remaining until the arrestee's eighteenth birthday, or for the appropriate revocation period provided in paragraphs (1) to (4) or in subsection (d), whichever is longer.

. . . .

(d) The driver's license of an arrestee who refuses to be tested after being informed of the sanctions of this part shall be revoked under subsection (b)(1), (2), (3), and (4) for a period of one year, two years, four years, and a lifetime, respectively.

Subsection (b) above designates the administrative revocation periods applicable to arrestees who *submit* to an alcohol concentration test while subsection (d) sets out the administrative revocation periods for arrestees who *refuse* testing for alcohol concentration. *See State v. Wilson,* 92 Hawai'i 45, 49, 987 P.2d 268, 272 (1999). Focusing on the language of subsection (d), Rodgers argues that, because the driver's license of an arrestee who refuses testing for alcohol concentration is revoked pursuant to subsection (b), he or she is eligible for a conditional driver's permit. We disagree.

As previously indicated, HRS § 286–264(a) sets forth the criteria for the issuance of a conditional driver's permit. Under HRS § 286–264(a), a conditional driver's permit is available to "an arrestee who is subject to an administrative revocation *period as provided in section 286–261(b)(1).*" Thus, the period, or term, of administrative revocation determines who is eligible for a conditional permit. Subsection (b)(1) specifies an indeterminate period of administrative revocation between three months and one year. Although subsection (d) incorporates the scheme of escalating penalties from subsection (b) based upon the number of prior alcohol enforcement contacts, subsection (d) designates a fixed, one-year period of administrative revocation for an arrestee who refuses testing for alcohol concentration and who has no prior

alcohol enforcement contacts during the five years preceding the date of arrest. Thus, under the plain language of HRS § 286–261, subsection (d) clearly designates a different administrative revocation period from that prescribed in subsection (b)(1).

 Additionally, we note that the effect of Rodgers's interpretation of HRS § 286–261(d) leads to a result that is inconsistent with the intent of the legislature. Under Rodgers's interpretation, the Administrative Director [Director] has the discretion to issue conditional permits regardless of whether the arrestee had submitted to an alcohol concentration test. However, we have noted,

> because the legislature has manifested a clear intent that "refusing" arrestees receive enhanced periods of administrative revocation, as compared to their "non-refusing" counterparts, it follows that the Director's discretionary authority to increase the periods of administrative revocation pursuant to HRS § 286–261(b) is "capped" by the mandatory and nondiscretionary periods enumerated in [HRS § 286–261(d) ]. Were this not so, the Director could effect an anomaly, namely, that a "non-refusing" arrestee could be subject to a period of administrative revocation greater than his or her "refusing" counterpart, a result clearly inconsistent with [the administrative license revocation scheme's] purposes.

*Gray v. Administrative Director of the Court,* 84 Hawai'i 138, 160–61, 931 P.2d 580, 602–03 (1997). Rodgers's interpretation would grant the Director discretion to, in effect, shorten the "mandatory and nondiscretionary" periods of administrative revocation enumerated in HRS § 286–261(d). Moreover, HRS § 286–264(a) places no limits on the Director's discretion to extend the thirty-day minimum period of absolute administrative revocation before awarding a conditional driver's permit. Thus, under Rodgers's interpretation, the Director could subject a "non-refusing" arrestee to a longer period of absolute administrative revocation than his or her "refusing" counterpart, a result that is inconsistent with the legislature's intent. Based on the foregoing, we hold that arrestees who refuse to take a test

for alcohol concentration are not subject to the administrative revocation period provided under HRS § 286–261(b)(1) and, therefore, are not eligible for conditional driver's permits. Accordingly, the HPD 386B forms did not misinform Rodgers about the eligibility criteria for a conditional driver's permit.

### B. The Definition of Prior Alcohol Enforcement Contacts

Although the absence of a definition of prior alcohol enforcement contacts was raised by the parties below, and again on appeal, the district court's order does not indicate that it considered the issue. However, given our holding that the district court erred in suppressing the evidence of Rodgers's alcohol test based upon the information regarding eligibility for a conditional driver's permit, we must address the issue.

Rodgers argues that this court's holding in *Castro v. Administrative Director of the Courts,* 97 Hawai'i 463, 40 P.3d 865, *reconsideration denied,* 97 Hawai'i 463, 40 P.3d 865 (2002), is controlling in the instant case. In *Castro,* this court concluded that "the phrase 'prior alcohol enforcement contacts' would incorporate and incorrectly connote, in a layperson's mind, arrests for DUI[,]" and that such a misinterpretation was not unreasonable. *Castro,* 97 Hawai'i at 469, 40 P.3d at 871. We held that, inasmuch as the information conveyed to the arrestee did not inform him which revocation period applied to him, the misleading information legally precluded him from making a knowing and intelligent decision whether to submit to an alcohol concentration test. *Castro,* 97 Hawai'i at 470, 40 P.3d at 872.

 In the instant case, however, Rodgers stipulated that this was her first arrest for DUI within the past five years. Thus, even if she reasonably believed that "prior alcohol enforcement contacts" included DUI arrests, only one period of administrative revocation could have applied to her. Therefore, our holding in *Castro* is inapposite to the instant case because Rodgers was not misled as to which penalty applied to her.

As we have noted *supra,* the HPD 386B forms do not define the term "prior alcohol enforcement contacts." Rodgers also argues

that a reasonable person could easily be confused and misled as to whether "prior alcohol enforcement contacts" includes: (1) a prior arrest or conviction for having an open container of an alcoholic beverage in a motor vehicle; (2) a prior arrest or conviction for being a minor in possession of an alcoholic beverage; (3) a liquor license violation; (4) a "drunk and disorderly" conviction; or (5) a prior arrest or conviction for selling an alcoholic beverage to a person less than 21 years of age. However, Rodgers does not claim, and the record does not indicate, that she had ever been arrested for or convicted of any of the offenses she lists. Nothing before us explains why or how she could have been misled into attributing the various interpretations she offers to the relevant term, "prior alcohol enforcement contacts." Therefore, given: (1) the HPD 386B forms' specific references to "Driving Under the Influence of Intoxicating Liquor" and "Habitually Driving Under the Influence of Intoxicating Liquor or Drugs"; and (2) the context of Rodgers's DUI arrest; and (3) the specific absence of any facts explaining why or how Rodgers could have been misled into interpreting "prior alcohol enforcement contacts" in the manner she suggests, we hold that, under the circumstances of this case, the absence of a definition of prior alcohol enforcement contacts did not affect Rodgers's knowing and intelligent decision to take an alcohol test.

## IV. *CONCLUSION*

Based on the foregoing, we hold that, under the facts of this case, Rodgers was not misinformed as to the eligibility requirements for a conditional driver's permit and that the absence of a definition of "prior alcohol enforcement contacts" did not affect the knowing and intelligent decision to take an alcohol test. Consequently, we vacate the district court's July 3, 2001 findings of fact, conclusions of law, and order suppressing evidence of Rodgers's alcohol test and remand this case for further proceedings.