124 P.3d 965

**David C. MINNICH, Petitioner–Appellant**

v.

**ADMINISTRATIVE DIRECTOR OF the COURTS, State of Hawai'i, Respondent–Appellee.**

No. 27068.

Supreme Court of Hawai'i.

Dec. 19, 2005.

As Corrected Jan. 5, 2006.

Earle A. Partington, Honolulu, on the briefs, for petitioner-appellant.

Girard D. Lau, Deputy Attorney General, State of Hawai'i, on the briefs, for respondent-appellee.

MOON, C.J, LEVINSON, NAKAYAMA, ACOBA, and DUFFY, JJ.

Opinion of the Court by ACOBA, J.

We hold, in this appeal by Petitioner–Appellant David C. Minnich (Petitioner), from the December 20, 2004 judgment of the district court of the first circuit[1] (the court) affirming the October 4, 2004 decision of Respondent–Appellee Administrative Director of the Courts, State of Hawai'i (Respondent),[2] that (1) *Freitas v. Admin. Dir. of the Courts*, 108 Hawai'i 31, 116 P.3d 673 (2005) [hereinafter, *Freitas II*], and *Dunaway v. Admin. Dir. of the Courts*, 108 Hawai'i 78, 117 P.3d 109 (2005) apply, and as to issues not decided by those cases, (2) the provisions under Hawai'i Revised Statutes (HRS) § 291E–3(a) and (c) (Supp.2004)[3] apply to administrative revocation of driver's license proceedings, (3) evidence of a defendant's blood-alcohol level obtained from a blood alcohol chemical (BAC) test more than three hours after an alleged violation is relevant but must be offered in compliance with the Hawai'i Rules of Evidence (HRE) as prescribed under HRS § 291E–3(c), and (4) the Director was right in concluding that irrespective of Petitioner's BAC test result, the remainder of the evidence supported the conclusion that Petitioner was operating his vehicle while under the influence of an intoxicant (DUI). In light of our holding, we vacate the Director's finding that the three-hour time frame for drawing a blood sample under HRS § 291E–3 applies only to criminal prosecutions, but affirm the court's judgment.

## I.

On September 5, 2004, Petitioner was arrested in Honolulu, Hawai'i, for DUI, in violation of HRS § 291E–61(a) (Supp.2004),[4] after a motor vehicle he was driving collided with a median guard rail and after he failed the field sobriety tests. Subsequently, Petitioner consented to and failed a BAC test. Petitioner's driver's license was revoked and the revocation was sustained for a period of three months by a review officer of the Administrative Driver's License Revocation Office (ADLRO) on September 10, 2004. Petitioner requested a hearing within six days of the revocation pursuant to HRS § 291E–37 (Supp.2004)[5] and the hearing was scheduled on September 29, 2004.

On the day of and prior to the hearing, two women came into the ADLRO and asked to attend Petitioner's hearing. The women refused to follow the ADLRO's sign-in and identification procedures, stating that to do so would violate their privacy. The women

1. The Honorable David C. Lo presided.

2. Hawai'i Revised Statutes (HRS) § 291E–1 (Supp.2004) states that, " 'Director' means the administrative director of the courts or any other person within the judiciary appointed by the director to conduct administrative reviews of hearings or carry out other functions relating to administrative revocation under part III [entitled 'Administrative Revocation Process']." *See Soderlund v. Admin. Dir. of the Courts*, 96 Hawai'i 114, 115 n. 1, 26 P.3d 1214, 1215 n. 1 (2001). Hereinafter, "Respondent" is used interchangeably to designate the administrative review officer and the hearing officer.

3. The texts of those provisions are produced *infra*.

4. HRS § 291E–61(a) (Supp.2004) provides in pertinent part:

**Operating a vehicle under the influence of an intoxicant.** (a) A person commits the offense of operating a vehicle under the influence of an intoxicant if the person operates or assumes actual physical control of a vehicle:
(1) While under the influence of alcohol in an amount sufficient to impair the person's normal mental faculties or ability to care for the person and guard against casualty;
. . . .
(4) With .08 or more grams of alcohol per one hundred milliliters or cubic centimeters of blood.

5. HRS § 291E–37 (Supp.2004) provides in pertinent part:

**Administrative review; procedures; decision.** (a) The director automatically shall review the issuance of a notice of administrative revocation and shall issue a written decision administratively revoking the license and privilege to operate a vehicle, and motor vehicle registration if applicable, or rescinding the notice of administrative revocation. . . .

. . . .
(b) The respondent shall have the opportunity to demonstrate in writing why the respondent's license and privilege to operate a vehicle . . . should not be administratively revoked and, within three days of receiving the notice of administrative revocation . . . shall submit any written information . . . to the director's office or to any office or address designated by the director for that purpose.

offered to be searched instead, but were not granted entry.

During the hearing, Petitioner, through his counsel, contended that, under this court's decision in *Freitas v. Admin. Dir. of the Courts,* 104 Hawai'i 483, 489, 92 P.3d 993, 999 (2004) [hereinafter *Freitas I*], he was entitled to a hearing on the validity of the ADLRO security procedures.

Over Petitioner's objections, the hearing officer received most of the ADLRO file into evidence, including the Honolulu Police Department (HPD) 396B Implied Consent Form (HPD 396B form), the arrest report, the Standardized Field Sobriety Test (SFST) results, and the sworn statements of the arresting officer and BAC test technician. The arrest report indicated that Arresting Officer Miya Brouwer (Officer Brouwer) was sent by dispatch at approximately 10:35 p.m. and that she arrived at the scene at about 10:40 p.m.

The hearing officer then advised Petitioner that he could begin his presentation and that the hearing was conducted *de novo*, to which Petitioner objected.

Petitioner requested that a particular procedure be followed.[6] The hearing officer stated that she was not required to follow Petitioner's requested procedure.

Officer Brouwer was then called to testify. Officer Brouwer testified that she was personally supervised by her training officer, Officer Mei King (Officer King). Officer Brouwer related that this was the third arrest she had made for DUI. When they arrived at the scene of Petitioner's accident, another police officer, Officer Eric Lorica (Officer Lorica), was already present. Officer Brouwer noted that Petitioner's vehicle had sustained front end damage from having hit a guardrail of an on-ramp from Kamehameha Highway to the H–1 freeway and that the damage to the vehicle was severe. Officer Brouwer did not know how much time had elapsed between the time of the accident and her arrival.

After questioning Petitioner for approximately ten minutes, at approximately 10:50 p.m., Officer Brouwer began to administer the SFSTs because of Petitioner's appearance and the odor of alcohol on his breath. While Petitioner's eyes were not red or bloodshot, Officer Brouwer observed them to be glassy and Officer Lorica reported them to be "watery and glassy." Officer Brouwer conceded that a driver would be "shaken up" in an accident such as this one.

Officer Brouwer administered the SFSTs on the freeway. The ground was level and the street was damp as it had begun to drizzle. The three SFSTs are (1) the walk-and-turn (WAT), (2) the one-leg stand (OLS), and (3) the horizontal gaze nystagmus (HGN). Officer Brouwer administered all three tests to Petitioner. Officer Brouwer admitted to not knowing how the accident affected Petitioner's performance on the SFSTs, although Petitioner was observed to be, and claimed that, he was fine.

During his cross examination of Officer Brouwer, Petitioner's counsel referred to a manual entitled *DWI Detection and Standardized Field Sobriety Testing, Participant Manual,* 2002 ed., published by the National Highway Traffic Safety Administration (NHTSA). The manual provides instructions for administering SFSTs. The WAT instructions state that the "[w]alk and [t]urn test requires a designated straight line and should be conducted on a reasonably dry, hard, level, nonslippery surface." Officer Brouwer was not trained at the police academy to administer the WAT on an actual line and she did not do so with Petitioner. Officer Brouwer also admitted that the surface "might" have been slightly slippery from the drizzle, but not wet. The OLS test instructions in the manual provide that the "[o]ne-leg-stand requires a reasonably dry, hard, level and non-slippery surface. Suspect's safety should be considered at all times." Officer Brouwer noted that the ground was level and that it had started to drizzle at the time she administered the OLS to Petitioner.

In connection with the HGN test, the manual contained an illustration of a protractor device which aids a police officer to estimate

---

**6.** The written procedure proposed by Petitioner is identical to the hearing procedure requested in *Dunaway v. Admin. Dir. of the Courts,* 108 Hawai'i 78, 81 n. 5, 117 P.3d 109, 112 n. 5 (2005).

a forty-five degree angle required for the test's accuracy. Officer Brouwer had never seen the device before and had not used it in her training. Officer Brouwer was taught it was important to be able to identify a forty-five degree angle when administering the HGN, and although she did not use a protractor to do so, she employed an alternative technique.[7] Petitioner asserted that all three SFST results were inadmissible because the tests were not administered in accordance with NHSTA standards.

The record indicated that Petitioner was arrested and consented to a BAC test. The BAC test registered .23 grams of alcohol per hundred milliliters or cubic centimeters of blood.[8] Between the time of his arrest and the time a blood sample was taken, Petitioner did not consume any food or beverage. Petitioner objected when Respondent admitted the BAC test results into evidence, arguing that under HRS § 291E–3, such results are admissible without further evidence only if the blood is drawn within three hours of the alleged violation. Petitioner claimed that because there was no evidence to indicate the time at what any alcoholic beverage was consumed and the time of the collision, the BAC test results were inadmissible. The hearing officer found that the three-hour limitation pertained to criminal prosecutions and that because the ADLRO process is a civil administrative proceeding, the three-hour limit did not apply.

Petitioner then made the following objections: (1) he was denied his own hearing on the ADLRO security procedures; (2) a valid breath or BAC test is a jurisdictional requirement for administrative revocation and, given the absence of a time frame for the accident, the ADLRO does not have jurisdiction; (3) the Notice of Administrative Revocation (Notice) is void because the arresting officer failed to properly inform Petitioner of the implied consent law; (4) while Petitioner was informed that he had consented to a BAC test by driving, he was not informed that he had a legal right to refuse such a test; (5) the Notice fails to explain the distinction between administrative revocation and criminal suspension pursuant to HRS § 291E–34(a)(2) (Supp.2004); (6) the HPD 396B form (a) erroneously notified him that the only issue in an administrative revocation was whether the result of the BAC test was .08 or over or the test was refused, and (b) erroneously advised him that the minimum length of revocation is three months when HRS § 286–104(1) (Supp.2004) mandates a minimum revocation of one year; and (7) that the form misled him to believe that the State of Hawai'i could revoke his New York driver's license.

## II.

By a decision dated October 4, 2004, the hearing officer sustained the three-month revocation of Petitioner's driver's license. The hearing officer made the following relevant findings and conclusions:

4. Validity of the SFST.

> *within three hours after the time of the alleged violation* as shown by chemical analysis or other approved analytical techniques *of the person's blood,* breath, or urine *shall be competent evidence that the person was under the influence of an intoxicant at the time of the alleged violation.*
>
> . . . .
>
> (c) *Nothing in this section shall be construed as limiting the introduction,* in any criminal proceeding for a violation under section 291E– 61 or 291E–61.5 *or in any proceeding under part III, of relevant evidence of a person's alcohol concentration or drug content obtained more than three hours after an alleged violation; provided that the evidence is offered in compliance with the Hawaii rules of evidence.*
> (Emphases added).

---

7. Officer Brouwer explained the technique she was trained to perform for estimating the required forty-five degree angle for an HGN test:
 If I walk up to the person and I place my hands on their shoulders and I position myself so that the middle of my body is left to the, their right side and I extend my hand, if I step back and extend my hand to the fullest length that it can go, that is approximately [a] forty-five degree angle.

8. HRS § 291E–3 (Supp.2004) provides, in relevant part:
 **Evidence of intoxication.** (a) In any criminal prosecution for a violation of section 291E–61 or 291E–61.5 or *in any proceeding under part III:*
 (1) *.08 or mo re grams of alcohol per one hundred milliliters or cubic centimeters of the person's blood;*
 . . . .

. . . .

The Arresting Officer testified that: she could not identify the manual proffered by Counsel; *she is certified to administer the SFST; she administered the test in accordance with her training; and, she had the benefit of the oversight of an experienced officer who did not suggest any adjustments in the administration of the [Petitioner]'s test.* This hearing officer finds that the [Petitioner]'s SFST was properly administered.

. . . .

[E]ven with consideration given to Counsel's arguments about the administration of the SFST, *the remainder of the SFST and the evidentiary record contain sufficient information to conclude that there was probable cause for the Arresting Officer to believe that the [Petitioner] had operated the vehicle while under the influence of an intoxicant.*

7. Blood Test

. . . .

The record reflects that the Arresting Officer was dispatched to the scene of the MVC on SEPTEMBER 5, 2004 at 10:35 P.M., the [Petitioner] was arrested at 11:10 P.M., and that the [Petitioner]'s blood sample was drawn at 12:35 A.M. on SEPTEMBER 6, 2004. If the MVC had occurred close to an hour prior to dispatch, the blood sample nevertheless would have been timely drawn. *This Hearing Officer finds by a preponderance of the evidence that the [Petitioner]'s sample was properly drawn within the allotted time frame.*

. . . .

FURTHER FINDINGS OF FACT RELATING TO LICENSE REVOCATION

. . . .

9. While speaking to the [Petitioner], *the Arresting Officer detected a strong odor of an alcoholic beverage* coming from the [Petitioner]'s breath.

10. The Arresting Officer further observed other physical signs of possible intoxication: *The [Petitioner]'s eyes were glassy and the [Petitioner] spoke very slowly and slurred his words.*

11. The [Petitioner] *admitted that he had consumed alcoholic beverages.*

. . . .

13. The [Petitioner] showed *signs of impairment on all phases of the Horizontal Gaze Nystagmus Test* ("HGN") phase of the SFST.

14. During the walk-and-turn phase of the SFST, *the [Petitioner] exhibited several clues of possible impairment.*

15. During the one-leg-stand phase of the SFST, *the [Petitioner] kept falling off balance during the first ten seconds,* and that phase of the test was discontinued for the [Petitioner]'s safety.

16. [Petitioner] showed significant signs of impairment on the SFST.

17. *MEI KING ("Assisting Officer") detected a very strong odor of an alcoholic type beverage from the [Petitioner]'s breath, and noted that the [Petitioner] was unsteady, his eyes were droopy, and his speech was slow and deliberate.*

18. The Assisting Officer observed that *the [Petitioner] was very unsteady on his feet, that he stumbled twice almost falling, and continued to almost fall during the administration of the SFST.*

. . . .

30. The testing equipment used to conduct the blood test functioned in accordance with operating procedures, and the test result showed a *blood alcohol concentration of .23 on that test.*

CONCLUSIONS OF LAW RELATING TO LICENSE REVOCATION

. . . .

3. The Director concludes *there existed probable cause to believe that the [Petitioner] operated the vehicle while under the influence of an intoxicant.*

4. The Director concludes, by a preponderance of the evidence, that *the [Petitioner] operated the vehicle while under the influence of an intoxicant.*

5. The Director concludes that the [Petitioner] had an alcohol concentration, as

defined by HRS § 291E-1, of .08 or more.

6. The Director separately and independently concludes, by a preponderance of the evidence, that *irrespective of the [Petitioner]'s Horizontal Gaze Nystagmus Test ("HGN") test result, the remainder of the record nevertheless reflects that there was probable cause to believe that the [Petitioner] operated* the vehicle while under the influence of an intoxicant.

7. The Director separately and independently concludes, by a preponderance of the evidence, that *irrespective of the [Petitioner]'s blood test result, the remainder of the record nevertheless reflects that the [Petitioner] operated the vehicle while under the influence of an intoxicant.*

. . . .

(Emphases added.) Petitioner sought judicial review and the court affirmed the hearing officer in a judgment filed on December 20, 2004.

### III.

On appeal, Petitioner essentially argues that (1) the court erred in holding that Petitioner's state and federal constitutional rights to a public hearing were not violated with respect to (a) restrictions on public access to his ADLRO hearing and (b) his right to his own hearing on the validity of those restrictions; (2) the court erred in upholding the hearing officer's findings that (a) HRS § 291E-3, which states that a BAC test taken within three hours of the alleged violation is competent evidence of DUI, has no application to administrative revocation proceedings and that (b) Petitioner had driven his car within three hours of his BAC test when there is no evidence in the record to support this finding; (3) the court erred in upholding the admission of the SFST results when (a) the SFTSs were not administered in accordance with NHTSA requirements and (b) the SFSTs were administered after Petitioner had been involved in a major car accident; (4) the court erred in ruling that Petitioner had not been denied due process of law based on (a) a seeming contradiction in HRS § 291E-38(a) which declares the revocation hearing will "review the [administrative review] decision" yet allows motorists to call witnesses and offer evidence, suggesting that the hearing is *de novo,* (b) the lack of a uniform hearing procedure, (c) the admission of Respondent's entire file, (d) Respondent's adherence to *Desmond v. Admin. Dir. of the Courts,* 91 Hawai'i 212, 219, 982 P.2d 346, 353 (App.1998) [hereinafter, *Desmond I*] (holding that hearing officers should inform the parties of the procedures at the beginning of the hearing), *rev'd on other grounds,* 90 Hawai'i 301, 978 P.2d 739 (1998), and (e) the apparent disregard of a HRS § 291E, Part III procedure which, according to Petitioner, requires a valid chemical test result or refusal to confer jurisdiction on Respondent; (5) the court erroneously upheld the revocation because HPD 396B form (a) informed Petitioner that operating a vehicle on a public street meant that he had consented to a blood or breath test, but failed to tell him he had a right to withdraw that consent, (b) implied that the only issue in an administrative revocation is whether a test is over .08 BAC or is refused, and (c) misled Petitioner into believing that the State of Hawai'i had jurisdiction to revoke Petitioner's New York driver's license; and (6) Respondent reversibly erred in citing to unpublished district court decisions to justify her decision.

### IV.

At the outset, we note that several of Petitioner's arguments have been raised before. Arguments 4(a), 4(b), 4(c), 4(d), 4(e), 5(a), (5)(b), and 6 have been disposed of contrary to his position. *See Freitas II, supra,* and *Dunaway, supra.* Accordingly, we consider Petitioner's remaining arguments.

### V.

■ This court has established the scope of appellate review of a decision by the ADLRO:

Judicial review of a decision of the Director regarding the revocation of a driver's license is governed by HRS § 286–260, and is limited to the record of the adminis-

trative hearing and the questions whether the Director exceeded constitutional or statutory authority, erroneously interpreted the law, acted in an arbitrary or capricious manner, committed an abuse of discretion, or made a determination that was unsupported by the evidence in the record.

"Review of a decision made by [a] court upon its review of an [administrative] decision is a secondary appeal. The standard of review is one in which this court must determine whether the court [under review] was right or wrong in its decision[.]"

*Farmer v. Admin. Dir. of the Court, State of Hawai'i*, 94 Hawai'i 232, 236, 11 P.3d 457, 461 (2000) (internal quotation marks and citations omitted).

## VI.

 As to argument (1)(a), we have held that restrictions on the right to a public hearing must comport with the three-part test adopted by this court in *Freitas I*.[9] Following our holding in *Freitas I*, a majority of this court affirmed the validity of the Respondent's sign-in and identification requirement for members of the public who wish to attend a license revocation proceeding. *Freitas II, supra.*

 As to Petitioner's argument (1)(b) that under *Freitas I* he is entitled to his own hearing on the validity of the restrictions, we have held that under the doctrine of *stare decisis* a new hearing on the same issue is unnecessary in a case involving similar circumstances, noting that *Freitas II* acted as precedent. *Dunaway*, 108 Hawai'i at 83, 117 P.3d at 114. Here, Petitioner argues that he was entitled to, but denied, a hearing on the ADLRO security procedures. We hold, however, that the consent of a member of the public to be searched in these circumstances does not obviate the *Freitas II* requirements.

In *Freitas II*, a majority concluded "(1) that the ADLRO's identification and sign-in

procedure serves an important government interest in securing ADLRO hearings, (2) that the security procedure is unrelated to the content of the information disclosed at ADLRO hearings, and (3) that there is no less restrictive way to meet the goal of securing ADLRO's hearings." *Freitas II*, 108 Hawai'i at 37, 116 P.3d at 679. The basis for the majority's holding in *Freitas II* stemmed from the Respondent's findings in that case that the measures were instituted as a deterrent to people engaging in "unlawful, disruptive, or otherwise inappropriate behavior while within the hearing and inner-office area," *id.* at 34, 116 P.3d at 676, and that the measures were established to "provide a deterrent to inappropriate behavior[,]" *id.* at 37, 116 P.3d at 679. The *Freitas II* majority found that the procedures in question were the least restrictive means of securing hearings. *Id.* at 40, 116 P.3d at 682. Petitioner does not raise any arguments to warrant deviation from that finding. A consensual search would not be less restrictive than the current sign-in and identification procedure.

## VII.

 In argument (2)(a), Petitioner asserts that the court erred in upholding the hearing officer's ruling that HRS § 291E–3(a)(1) does not apply to administrative driver's license revocation proceedings. Part III of HRS chapter 291E is entitled "Administrative Revocation Process." Hence, a plain reading of the statute indicates that the phrase "any proceeding under Part III" refers to administrative license revocations. *State v. Toyomura*, 80 Hawai'i 8, 18, 904 P.2d 893, 903 (1995) (stating that "where the language of the statute is plain and unambiguous, our only duty is to give effect to its plain and obvious meaning"). We hold, then, that the court erred in upholding the hearing officer's ruling that HRS § 291E–3(c) applies only to criminal prosecutions and has no application to ADLRO cases.

---

9. The three-part test is as follows: "[1] that the regulation serve an important governmental interest; [2] that this interest be unrelated to the content of the information to be disclosed in the proceeding; and [3] that there be no less restrictive way to meet that goal." *Freitas v. Admin. Dir. of the Courts*, 104 Hawai'i 483, 489, 92 P.3d 993, 999 (2004) (adopting the test as outlined in *Brown & Williamson Tobacco Corp. v. Fed. Trade Comm'n*, 710 F.2d 1165, 1179 (6th Cir.1983) (citing *United States v. O'Brien*, 391 U.S. 367, 377, 88 S.Ct. 1673, 20 L.Ed.2d 672 (1968))) (emphasis omitted).

## VIII.

Petitioner next asserts in argument (2)(b) that because there was no evidence that the BAC test was taken within three hours of his driving, the BAC test was not competent evidence and, thus, was inadmissible under HRS § 291E–3(a)(1). He argues that because the hearing officer relied on this BAC test result, his revocation should be reversed.[10]

As indicated, *see supra* note 8, HRS § 291E–3(c) provides that "[n]othing in this section shall be construed as limiting the introduction ... *in any proceeding under Part III, of relevant evidence* of a person's alcohol concentration ... obtained *more than three hours after an alleged violation; provided that the evidence is offered in compliance with the Hawaii rules of evidence.*" (Emphases added.) Hence, HRS § 291E–3(c) permits a BAC test result taken *more* than three hours after an alleged violation to be introduced as evidence so long as it is relevant and not excluded by the Hawai'i Rules of Evidence. However, we need not decide this issue.

## IX.

■ For, irrespective of Petitioner's 0.23 BAC test result, the record contains substantial evidence to support the conclusion by the hearing officer that Petitioner was DUI. *See State v. Batson*, 73 Haw. 236, 248–49, 831 P.2d 924, 931 (1992) (defining "substantial evidence" as "credible evidence which is of sufficient quality and probative value to enable a man of reasonable caution to support a conclusion"). The accident took place on a highway at the entrance to a major freeway. Officer Brouwer arrived at the scene at 10:45 p.m., within five minutes of being dispatched. There is no evidence of any significant delay between the time of dispatch and the time of the accident. The SFSTs were administered within ten minutes of Officer Brouwer's arrival. Petitioner does not contend that he consumed alcohol after the car accident.

Petitioner admitted that he had consumed alcoholic beverages. Petitioner also had glassy eyes, a strong odor of alcoholic beverage on his breath, and slow and slurred speech. Officer Brouwer asked Petitioner if he was injured, and Petitioner replied that he was not, and that he was fine. This forecloses Petitioner's suggestions that the accident had an effect on the SFSTs. During the SFSTs Officer King observed Petitioner to be unsteady on his feet, and that he stumbled twice and almost fell. Officer Brouwer had to discontinue the OLS for Petitioner's safety.

Petitioner's objections to the WAT stems from his claim that the test was not administered on an actual straight line and that the ground was wet. His objections to the OLS also relates to his contention that the ground was wet. Officer Brouwer, however, disclaimed that the ground was wet but did admit that it had started to drizzle. Petitioner's objection to the administration of the HGN test was that the police failed to use a protractor. However, Officer Brouwer testified that she was trained to identify the same forty-five degree angle in an alternative manner.

The hearing officer further found that Officer Brouwer was qualified to administer the SFSTs, that she administered the test in accordance with her training, and that she had the benefit of the oversight of Officer King, her training supervisor. Under the circumstances, it cannot be concluded that the hearing officer abused her discretion in receiving evidence regarding the SFSTs. *Miller v. Tanaka*, 80 Hawai'i 358, 366, 910 P.2d 129, 137 (1995) (holding that "the Director's decision to receive evidence is reviewed for abuse of discretion").

Petitioner argues that many other jurisdictions have rejected such circumstantial evidence as insufficient to prove that the driver was intoxicated at the time he or she was operating the vehicle. *See Abelson v. State*, 269 Ga.App. 596, 604 S.E.2d 647 (2004); *Commonwealth v. Kelley*, 438 Pa.Super. 289, 652 A.2d 378 (1994); *State v. Clark*, 130 Vt.

---

10. Respondent contends, however, that under HRS § 291E–3(a)(1) (Supp.2004), a BAC test taken *"within three hours* ... shall be *competent*

*evidence."* (Emphases added.) The parties do not challenge the admission of the BAC test on this ground.

500, 296 A.2d 475 (1972). However, Respondent stresses that the cases cited by Petitioner are criminal cases which are subject to a "beyond a reasonable doubt standard." In contrast, HRS § 91–10 (1993) titled "Administrative Procedure, Rules of Evidence; official notice," provides that "(5) [e]xcept as otherwise provided by law, the party initiating the proceeding shall have the burden of proof, including the burden of producing evidence as well as the burden of persuasion. The degree or quantum of proof shall be a preponderance of the evidence."

Respondent emphasizes that the preponderance of the evidence standard merely requires that it be demonstrated that it was "more likely than not" that Petitioner was operating his vehicle at the time he was intoxicated. This court has held that "the preponderance standard directs the factfinder to decide whether the existence of the contested fact is more probable than its nonexistence." *Masaki v. Gen. Motors Corp.*, 71 Haw. 1, 14, 780 P.2d 566, 574 (1989) (internal quotation marks omitted). Based on the evidence adduced outside of the BAC test result, we conclude that the hearing officer and the court did not err in finding that it was more probable than not that Petitioner was intoxicated during the relevant time period. *Castro v. Admin. Dir. of the Courts*, 97 Hawai'i 463, 40 P.3d 865 (2002) (holding that a driving under the influence charge may be proved or an administrative license revocation may be sustained by relevant evidence of intoxication, even though a driver's blood alcohol concentration level is not considered).

## X.

█ In argument (5)(c) Petitioner contends that HPD 396B form misled him into believing that the State of Hawai'i had jurisdiction to revoke Petitioner's New York driver's license. He maintains that because he believed a refusal to take the test would lead to a revocation of his New York license, his consent to the blood test was not informed consent. Petitioner claims that his license revocation should be reversed as a remedy.[11]

However, Petitioner must demonstrate how HPD 396B form suggested that his New York's driver's license would be revoked if he refused to take a test or if he took a test and failed it. In *State v. Rodgers*, 99 Hawai'i 70, 70–71, 53 P.3d 209, 209–10 (2002), we rejected a motorist's argument that her consent to the chemical alcohol test was not knowing or intelligent because the form did not define "prior alcohol enforcement contact." We noted that nothing before the court "explains why or how … [the petitioner] could have been misled into attributing the various interpretations she offers to the relevant term." *Id.* at 75, 53 P.3d at 214. That proposition applies here.

The form does state the consequences for refusing to take a test if his or her driving record shows prior alcohol or drug enforcement contacts. The form's definition of "alcohol enforcement contact" or "drug enforcement contact" includes "[a] conviction in any other state … for an offense that is comparable" in its definition of "alcohol enforcement contact." But the record does not indicate that Respondent has any prior alcohol enforcement contacts that would lead him reasonably to believe that the provision applied to him and, hence, that his New York license could be revoked.

Respondent correctly notes the form does not mention New York, but states only that the motorist's "license and privilege to operate a vehicle will be revoked." As Respondent maintains, "the form states at the outset that the information on the form is provided '[p]ursuant to chapter 291E, Hawai'i Revised Statutes,'" in bolded letters. Hence, as Respondent contends, "[b]ecause the events occurred in Hawai'i," "the 'license and privilege' that will be revoked can reasonably be interpreted to reference only the motorist's license and privilege in Hawai'i, not in other states." Moreover, the language of the form focuses on this state.[12] Under a reasonable

---

11. *But see Voellmy v. Broderick*, 91 Hawai'i 125, 129–30, 980 P.2d 999, 1003–04 (App.1999) (holding that an arresting officer's failure to indicate that the notice of administrative revocation shall serve as a temporary driving permit as mandated by statute does not necessarily require reversal of a license revocation).

12. The form states in part:

interpretation, then, HPD 396B form applies only to revocation of the right to operate a vehicle in Hawai'i and does not convey a different meaning, as Petitioner contends. As such, we are not persuaded by Petitioner's argument (5)(c).

## XI.

For the foregoing reasons, the district court's judgment filed on December 20, 2004 is affirmed, except that we vacate the Director's finding that HRS § 291E–3 pertains only to criminal prosecutions.

1. Any person who operates a vehicle upon a public way ... *of the State* ....
 ....
4. ... [I]t is unlawful for you to operate a vehicle ... on *or in the waters of the State*
 ....

....
8. "Alcohol enforcement contact" or "drug enforcement contact" means:
 ....
 (d) Any conviction *in this State* ....
(Emphases added.)